# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### Southern Division

| | | |
|---|---|---|
| BERTHA MCNULTY and BRUNO COSSU, on behalf of themselves and others similarly situated, | : : : : | CIVIL ACTION FILE NO. |
| Plaintiff, | : : | |
| v. | : : : | **COMPLAINT – CLASS ACTION** |
| PREMIER MORTGAGE, LLC, | : : | **JURY TRIAL DEMANDED** |
| Defendant. | : : / | |

Plaintiffs Bertha McNulty and Bruno Cossu (hereinafter referred to as "Plaintiffs"), individually and on behalf of all others similarly situated, allege on personal knowledge, investigation of their counsel, and on information and belief, as follows:

## NATURE OF ACTION

1.      Even as far back as 2012, the Pew Research Center reported 69 percent of cellular users who use text messaging receive unwanted text message spam, with 25 percent of them receiving it on a weekly basis.  Jan Lauren Boyles and Lee Rainie, *Mobile Phone Problems*, Pew Research Center (Aug. 2, 2012), http://www.pewinternet.org/2012/08/02/mobile-phone-problems.

2.      Robocalls have only increased since the 2012 study.  "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls (statement of FCC Chairman).

3.      "The FTC receives more complaints about unwanted calls than all other complaints combined." Comment of the Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the TCPA of 1991, Notice of Proposed Rulemaking*, CG Docket No. 02-278, at p. 2; FCC 16-57 (June 6, 2016), *available at* https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf.

4.      This case involves a campaign by Premier Mortgage, LLC ("Premier Mortgage") to market its services through the use of automated telemarketing calls in plain violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*. (hereinafter referred to as the "TCPA").

5.      By using an automated telephone dialing system to send thousands of automated telemarketing calls without first obtaining the prior express written consent of recipients, Premier Mortgage violated the TCPA.

6.      Regardless of the type of equipment used, making unsolicited telemarketing calls numbers that are registered on the National Do Not Call List (hereafter "NDNCR"), which is a separate and additional violation of the TCPA. The recipients of Premier Mortgage's illegal calls, which include Plaintiffs and the proposed classes, are entitled to damages under the TCPA.

## PARTIES

7.      Plaintiff Bertha McNulty resides and received Premier Mortgage's telemarketing calls in West Bloomfield, Michigan.

8.      Plaintiff Bruno Cusso resides and received Premier Mortgage's telemarketing calls in Bluefield, Virginia.

9.      Defendant Premier Mortgage, LLC is a Michigan limited liability company, with a principal place of business in Farmington Hills, Michigan.

## JURISDICTION AND VENUE

10.      This Court also has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq*.

11.     This Court has general jurisdiction over Premier Mortgage because the it resides in this District.

12.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because Premier Mortgage resides and directed its TCPA violative conduct to Plaintiffs from this District, and also because Plaintiff McNulty resides and received Premier Mortgage's telemarketing calls here.

## TCPA BACKGROUND

Calls Made Using an "Automated Telephone Dialing System"

13.     The TCPA regulates, among other things, the use of an automated telephone dialing system ("ATDS") to make calls.  *See* 47 U.S.C. § 227, *et seq.*; *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Report and Order*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

14.     Specifically, the TCPA prohibits the use of an automated telephone dialing system to make any telemarketing call to a wireless number in the absence of an emergency or the prior express written consent of the called party.  *See* 47 U.S.C.  § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(2); *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1831 (F.C.C. 2012).

15.     The TCPA defines an "automatic telephone dialing system" as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." § 227(a)(1)(A)-(B).  An autodialer includes a device that receives a "preproduced list" of phone numbers (e.g., a list of thousands of marketing leads), and then uses a sequential or "random number generator to determine the order in which to pick phone numbers from [the] list" and then "store[s] those numbers to be dialed at a later time." *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1172 n.7 (2021).

16.     "[T]elemarketing means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(12).

17.     "[P]rior express written consent means an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory

authorizes such advertisements or telemarketing messages to be delivered."

47 C.F.R. § 64.1200(f)(8).

The National Do Not Call Registry

18.     Second, § 227(c) of the TCPA requires the FCC to "initiate a
rulemaking proceeding concerning the need to protect residential telephone
subscribers' privacy rights to avoid receiving telephone solicitations to which they
object." 47 U.S.C. § 227(c)(1).

19.     In this rulemaking proceeding, the FCC was instructed to "compare
and evaluate alternative methods and procedures (including the use of …
company-specific 'do not call systems …)" and "develop proposed regulations to
implement the methods and procedures that the Commission determines are most
effective and efficient to accomplish purposes of this section." *Id.* at (c)(1)(A), (E).

20.     Pursuant to this statutory mandate, the FCC issued two regulations.

21.     The relevant regulation under § 227(c) established company-specific
"do not call" rules. *In the Matter of Rules and Regulations Implementing the
Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752 (Oct. 16, 1992)
("TCPA Implementation Order").

22.     The FCC found that "the company-specific do-not-call list alternative
is the most effective and efficient means to permit telephone subscribers to avoid

unwanted telephone solicitations." *Id.* at 8765, ¶ 23.

23.     However, recognizing that an honor system would probably be insufficient, the FCC found that it "must mandate procedures for establishing company-specific do-not-call lists to ensure effective compliance with and enforcement of the requirements for protecting consumer privacy." *Id.* at ¶ 24.

24.     These procedures are codified at 47 CFR 64.1200(d)(1)-(7).

25.     Specifically, § 64.1200(d) requires a company to keep a written policy, available upon demand, for maintaining a do-not-call list, train personnel engaged in telemarketing on the existence and use of its internal do-not-call list, and record and honor "do not call" requests for no less than five years from the time the request is made. 47 CFR § 64.1200(d)(1, 2, 3, 6).

26.     These policies and procedures prohibit a company from making telemarketing calls unless they have implemented these policies and procedures. 47 CFR 64.1200(d).

27.     Accordingly, all telemarketing calls violate the TCPA unless Defendant can demonstrate that it has implemented the required policies and procedures.

28.     Consent is irrelevant to § 64.1200(d).

29.     A violation of § 227(c) through 47 C.F.R. § 64.1200(d) carries

statutory damages of $500 to $1,500 per call.

30.     Though some of these requirements mention "residential" telephones, they were all extended to cover calls to cellular telephones as well as residential telephones. 47 CFR § 64.1200(e).

31.     The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

32.     A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

33.     The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

## FACTUAL ALLEGATIONS

34.     Defendant Premier Mortgage is a "person" as the term is defined by 47 U.S.C. § 153(39).

35.     At no point has either Plaintiff sought out or solicited information regarding Defendant Premier Mortgage's services.

36.     Plaintiff McNulty's telephone number, XXX-XXX-8663, is registered to a cellular telephone service.

37.     Starting on May 6, 2021, Plaintiff McNulty began receiving calls from Premier Mortgage marketing their products or services.  In fact, on May 6, 2021, Plaintiff McNulty received two calls during which she advised Premier Mortgage that she was not interested in their products or services.

38.     Notwithstanding, Premier Mortgage continued to call Plaintiff McNulty, including on May 7, May 8, May 10, May 11, May 12, May 13, May 14, May 17, May 18.

39.     During one or more of these calls, Plaintiff McNulty noted that the call started with a long pause before an agent joined the line.

40.     During one or more of these calls, the agent identified as being with Premier Mortgage and provided an @premiermtg.com email address and toll-free telephone number at which he could be contacted.

41.     During one or more of these calls, Plaintiff McNulty requested that Premier Mortgage stop calling.

42.     Counsel for Plaintiff McNulty also provided notice to Premier Mortgage of its violative conduct in an effort to stop the calls.

43.     Notwithstanding, Premier Mortgage continued to make telemarketing calls to Plaintiff McNulty, including more than 20 calls after receipt of her counsel's letter.

44.     Plaintiff McNulty's telephone number had been registered with the NDNCR for more than 30 days prior to Premier Mortgage's first call to her.

45.     Plaintiff McNulty's number is used exclusively for residential, non-commercial purposes.

46.     The calls were not necessitated by an emergency.

47.     Plaintiff Cossu's telephone number, XXX-XXX-9146, is registered to a cellular telephone service.

48.     Starting on April 27, 2021, Plaintiff Cossu began receiving calls from Premier Mortgage marketing their products or services.  In fact, on April 27, 2021, Plaintiff Cossu received five calls, including at least two during which he advised Premier Mortgage that he was not interested in their products or services.

49.     Notwithstanding, Premier Mortgage continued to call Plaintiff Cossu, including on April 28, April 29, and April 30.

50.     During one or more of these calls, Plaintiff Cossu noted that the call started with a long pause before an agent joined the line.

51.     During one or more of these calls, the agent identified as being with Premier Mortgage and provided an @premiermtg.com email address.

52.     During one or more of these calls, Plaintiff Cossu requested that Premier Mortgage stop calling.

53.     Notwithstanding, Plaintiff Cossu continued to received calls from Premier Mortgage.

54.     Plaintiffs and all members of the Classes, defined below, have been harmed by the acts of Defendant because their privacy has been violated, they were annoyed and harassed, and, in some instances, they were charged for incoming calls. Plaintiffs and the Classes' Members were also harmed by use of their cell phone battery and the intrusion on their cellular telephone that occupied it from receiving legitimate communications.

55.     Defendant also did not maintain the policies and procedures required for maintaining a do-not-call list, as required by the regulation 47 C.F.R. § 64.1200(d), prescribed under 47 U.S.C. § 227(c).

56.     Defendant did not adequately document do-not-call requests when made, nor did it honor such requests.

57.     Plaintiffs each received more than one telemarketing call from

Defendant in violation of this regulation.

58.     Plaintiffs are not alone in their experiences with Defendant's calling

practices.

59.     Other consumers and former employees have complained about

Premier Mortgage's illegal telemarketing practices.  *See, e.g.,*

https://whocallsme.com/Phone-Number.aspx/3055085486/2.

## CLASS ACTION ALLEGATIONS

60.     Plaintiff incorporates by reference all other paragraphs of this

Complaint as if fully stated herein.

61.     Plaintiff brings this action on behalf of herself and the following

classes (the "Classes") pursuant to Federal Rule of Civil Procedure 23.

62.     Plaintiff proposes the following Class definitions, subject to

amendment as appropriate:

> **Robocalling Class:** All persons in the United States who, within four
> years prior to the commencement of this litigation until trial, received
> one or more telemarketing call on their cellular telephone number
> from or on behalf of Premier Marketing, made via the same system(s)
> used to call the Plaintiffs.

> **Policy Class:** All persons in the United States who, within four years
> prior to the commencement of this litigation until trial, received two or
> more telemarketing call on their residential landline or cellular
> telephone number from or on behalf of Premier Marketing.

**National Do Not Call Registry Class**: All persons in the United States who, within four years prior to the commencement of this litigation until trial, received two or more telemarketing call on their residential landline or cellular telephone number from or on behalf of Premier Marketing to a telephone number that was registered with the NDNCR for more than 30 days at the time of each call.

63.     Plaintiffs are members of and will fairly and adequately represent and protect the interests of these Classes as they have no interests that conflict with any of the class members.

64.     Excluded from the Classes are counsel, the Defendant, and any entities in which the Defendant has a controlling interest, the Defendant's agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

65.     Plaintiffs and all members of the Classes have been harmed by the acts of the Defendant, including, but not limited to, the invasion of their privacy, annoyance, waste of time, the use of their cell phone battery, and the intrusion on their telephone line that occupied it from receiving legitimate communications.

66.     This Class Action Complaint seeks injunctive relief and money damages.

67.     The Classes as defined above are identifiable through the Defendant's dialer records, other phone records, and phone number databases.

13

68.     Plaintiff does not know the exact number of members in the Classes, but Plaintiff reasonably believes Class members number, at minimum, in the hundreds in each class based on the nature of telemarketing campaigns like Defendant's.

69.     The joinder of all Class members is impracticable due to the size and relatively modest value of each individual claim.

70.     Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

71.     There are well defined, nearly identical, questions of law and fact affecting all parties. The questions of law and fact, referred to above, involving the class claims predominate over questions which may affect individual Class members.

72.     There are numerous questions of law and fact common to Plaintiff and to the proposed Classes, including but not limited to the following:

(a) whether Defendant utilized an automatic telephone dialing system to make calls to the members of the Robocalls Class;

(b) Whether agents operating on behalf of Defendant utilized an automatic telephone dialing system in making calls to members of the Robocalls Class;

(c) Whether Defendant recorded or honored "do not call" requests;

14

(d) whether Defendant systematically made multiple telephone calls to members of the National Do Not Call Registry Class;

(e) whether Defendant made calls to Plaintiffs and members of the Classes without first obtaining prior express written consent to make the calls;

(f) whether Defendant's conduct constitutes a violation of the TCPA; and

(g) whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

73.    Further, Plaintiffs will fairly and adequately represent and protect the interests of the Classes.  Plaintiff has no interests which are antagonistic to any member of the Classes.

74.    Plaintiffs have retained counsel with substantial experience in prosecuting complex litigation and class actions, and especially TCPA class actions.  Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the other members of the Classes, and have the financial resources to do so.

75.    Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy.

76.     The likelihood that individual members of the Classes will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

77.     Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

**FIRST CAUSE OF ACTION**
**Statutory Violations of the Telephone Consumer Protection Act**
**(47 U.S.C. 227, et seq.) on behalf of Plaintiffs and the Robocalls Class**

78.     Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

79.     Premier Mortgage violated the TCPA by sending, or causing to be sent via an agent, calls to the cellular telephones of Plaintiffs and members of the Robocalls Class using an automated dialer without their prior express written consent.

80.     As a result of the Defendant's violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and Robocalls Class members are entitled to an award of $500 in statutory damages for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

81.     The Plaintiffs and Robocalls Class Members are entitled to an award

of treble damages if Defendant's actions are found to have been knowing or

willful.

82.     Plaintiffs and Robocalls Class members are also entitled to and do

seek injunctive relief prohibiting the Defendant from advertising their goods or

services, except for emergency purposes, using an autodialer in the future.

**SECOND CAUSE OF ACTION**
**Violation of the Telephone Consumer Protection Act**
**(47 U.S.C. 227, et seq. and 47 C.F.R. §§ 64.1200(d))**
**on behalf of Plaintiffs and the National Do Not Call Registry Class**

83.     Plaintiffs incorporate by reference the foregoing allegations as if fully

set forth herein.

84.     Premier Mortgage violated the TCPA and the Regulations by making,

or having its agent make, two or more telemarketing calls within a 12-month

period on Premier Mortgage's behalf to Plaintiffs and the members of the National

Do Not Call Registry Class while those persons' phone numbers were registered

on the National Do Not Call Registry.

85.     As a result of the Defendant's violations of 47 U.S.C. § 227 *et seq.*,

Plaintiffs and National Do Not Call Registry Class members are entitled to an

award of up to $500 in statutory damages for each and every violation of the

statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

86.     Plaintiffs and National Do Not Call Registry Class members are also

entitled to and do seek injunctive relief prohibiting the Defendant from advertising

their goods or services, except for emergency purposes, to any number on the

National Do Not Call Registry in the future.

87.     The Defendant's violations were knowing or willful.

## THIRD CAUSE OF ACTION
### Violation of the Telephone Consumer Protection Act
### (47 U.S.C. 227(c) and 47 C.F.R. §§ 64.1200(d))
### on behalf of Plaintiffs and the Policy Class

88.     Plaintiffs incorporate by reference the foregoing allegations as if fully

set forth herein.

89.     Defendant placed numerous calls for telemarketing purposes to

Plaintiffs' and Policy Class Members' telephone numbers.

90.     Defendant did so despite not recording or honoring "do not call"

requests.

91.     Defendant placed two or more telephone calls to Plaintiffs and Policy

Class Members in a 12-month period.

92.     Plaintiffs and Policy Class Members are entitled to an award of $500

in statutory damages telephone call in addition to and separate from any award for

damages related to Defendant's calls using an automatic telephone dialing system

and in addition to and separate from any award for Defendant's calls to persons on the National Do-Not-Call Registry.

93.     Plaintiffs and Policy Class Members are entitled to an award of treble damages in an amount up to $1,500 per telephone call if the Defendant's violations were knowing and/or willful.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of the Classes, pray for the following relief:

A.     Injunctive relief prohibiting Defendant's illegal telemarketing;

B.     Actual and/or statutory damages and costs;

C.     An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Classes the Court deems appropriate, finding that Plaintiffs are proper representatives of the Classes, and appointing the lawyers and law firms representing Plaintiffs as counsel for the Classes;

D.     Such other relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiffs request a jury trial as to all claims of the complaint so triable.


Dated: June 2, 2021               PLAINTIFFS, on behalf of themselves
                                  and others similarly situated,

                                  */s/ Avi R. Kaufman*
                                  Avi R. Kaufman
                                  avi@kaufmanpa.com
                                  Kaufman P.A.
                                  400 NW 26th Street
                                  Miami, FL 33127
                                  Telephone: (305) 469-5881

                                  Anthony Paronich
                                  Email: anthony@paronichlaw.com
                                  PARONICH LAW, P.C.
                                  350 Lincoln Street, Suite 2400
                                  Hingham, MA 02043
                                  Telephone: (617) 485-0018
                                  Facsimile: (508) 318-8100

                                  *Attorneys for Plaintiffs*

                                  */s/ George T. Blackmore*
                                  George T. Blackmore (P76942)
                                  BLACKMORE LAW PLC
                                  21411 Civic Center Drive, Suite 200
                                  Southfield, MI 48076
                                  Telephone: (248) 845-8594
                                  Facimile: (855) 744-4419
                                  E-Mail:george@blackmorelawplc.com
                                  *Local Counsel for Plaintiffs*

20